IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-03255-CBS

VALARIE D. CHILES,
    Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
    Defendant.

---

MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social Security's final decision denying Ms. Chiles's application for Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") benefits.[1]  Pursuant to the Order of Reference dated June 16, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. # 20).  The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings.  SSI pays benefits to people with disabilities whose income and resources are below set limits.  Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level.

I.     Procedural History

Ms. Chiles filed an application for SSI benefits with a protective filing date of April 28, 2011.[2]  (*See* Administrative Record ("Tr.") (Doc. # 9) at 145-51).  Her application for SSDI was escalated to the protective filing date of July 10, 2012.  She claimed in both applications that she became disabled on August 15, 2009, due to a back injury and depression.[3]  (Tr. 186).  The State agency denied her claims on August 11, 2011 and she requested a hearing before an Administrative Law Judge ("ALJ").[4]  (Tr. 70-82, 85-89).  ALJ Paul Coulter held a hearing on April 2, 2012.  (Tr. 44-68).  Ms. Chiles was represented by counsel and testified at the hearing.  (*See id.;* Tr. 83-84).  Ms. Mary E. Jesko testified at the hearing as a Vocational Expert ("VE").  (Tr. 44-68, 137-39).  The ALJ issued his written decision on April 4, 2013, concluding that Ms. Chiles was disabled within the meaning of the Act beginning on February 22, 2012, but not before (Tr. 31-40).  On June 3, 2013, the Appeals Council sent notice of its review of the ALJ's decision, pursuant to 20 CFR 404.960 and 416.1469.[5]  (Tr. 140-144).  In that notice, the Appeals Council advised Ms. Chiles of its intention to issue an unfavorable decision finding her not disabled for the entire period at issue in her applications for benefits and provided her the opportunity to submit additional evidence and comments.  The Appeals Council received and considered comments and additional evidence and found no basis for changing its decision.  (Tr. 312-321,

---

[2] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form.  20 C.F.R. § 404.610.  However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date.  *Id.* § 404.630.

[3] The ALJ and the Appeals Council did not find that Ms. Chiles' depression was a severe impairment and she does not challenge that finding.

[4] "State agencies make disability . . . determinations for the Commissioner for most persons living in the State." 20 C.F.R. § 404.1503(a) (2013).

[5] The Appeals Council may review an ALJ's decision on its own motion. See 20 C.F.R. § 404.969(a).

2

17-22). Ms. Chiles filed this action on November 29, 2013. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted). *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agacny." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of rehg* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.     Analysis

An individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); § 1382c(a)(3)(B). The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750. At step four of the evaluation process, an ALJ must determine a claimant's Residual Functional Capacity (RFC). The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite [her] impairments; the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account her RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still

> exertionally capable of performing. . . . The decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
> . . .
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted).

Ms. Chiles was 48 years old at the time she applied for disability benefits. She graduated from high school, attended community college for one and a half years, and received some specialized secretarial training. (Tr. 48, 187). She has a record of working in food service, retail, quality control, and as a warehouse puller, a mail clerk, a time keeper, and a warehouse supervisor. (Tr. 51, 58, 60-62, 187, 202-08, 226). Ms. Chiles lives with a roommate and her two grandchildren. (Tr. 48). She drives, picks up her grandson from school, feeds and walks her dog, and attends medical appointments. (Tr. 48-50, 211). She is able to get in and out of bed, dress and bathe herself, and cut her own hair. (Tr. 49, 211, 280). She is able to do some dishes, cooking, housework, laundry, and grocery and other shopping. (Tr. 48-50, 280). She can walk for 10 to 20 minutes and "across the street." (Tr. 50, 215). She is a smoker, has taken prescription medications for depression, back pain, and high blood pressure, and occasionally takes ibuprofen. (Tr. 209, 217, 222, 228, 232, 251). She monitors her own medication and is capable of managing her finances. (Tr. 213). She assists her grandson with his homework and enjoys watching television and movies. (Tr. 49, 214)).

The record indicates that between October 27, 2008 and June of 2009, Ms. Chiles sought treatment at the Emergency Department of Avista Adventist Hospital for discomfort in her chest that was treated with painkillers and at Boulder Community Hospital's Family Medical

Associates for pain in her right hip that was treated with anti-inflammatory medication, for follow-up treatment of depression, for evaluation of fatigue, and for sinus and chest congestion. (Tr. 239-244, 252-265).

On June 1, 2009, Ms. Chiles went to the Emergency Department at Avista Adventist Hospital in Louisville, Colorado. (Tr. 232-238). She reported a sudden onset of back pain after attempting to move a box while at work. (Tr. 232-238). She was administered and prescribed pain medication, instructed to contact her worker's compensation provider and her primary physician, and released the same day. (Tr. 233). The next day, Ms. Chiles attended an evaluation by Physician's Assistant Richard Shouse at Concentra Medical Center in Thornton, Colorado. (Tr. 275-278). He noted tenderness "to the right lower point of scapula [shoulder blade] to the costal region [lower chest]." (Tr. 275). Mr. Shouse prescribed pain medication and physical "therapy 2 times per week for 1 to 2 weeks." (Tr. 276). (*See also* Tr. 267-270 (physical therapy records)). At follow-up visits in June 2009, Ms. Childs reported improvement and Mr. Shouse reported good range of motion and reduced pain. (Tr. 273-74).

On June 22, 2009, Ms. Chiles was seen by Adelina Longoria, M.D. of Boulder Community Hospital's Family Medical Associates for complaints of sore throat, headaches, chills, and muscle aches. (Tr. 246-251). Dr. Longoria recorded that Ms. Chiles had "[f]ull range of movement throughout," motor strength of 5 out of 5 throughout," and "multiple and scattered soft tissue points of tenderness involving cervical neck, superior [upper] trapezius, and proximal superior and inferior extremities." (Tr. 251). Dr. Longoria prescribed Toradol, an anti-inflammatory medication, for pain management. (Tr. 251).

At a follow-up office visit with Mr. Shouse on July 21, 2009, Ms. Chiles reported that her symptoms were improving with physical therapy and she felt better. (Tr. 272). She reported

6

that she had no pain and her musculoskeletal exam showed full range of motion and normal strength. (Tr. 272). Mr. Shouse released her to resume regular activity with no work restrictions. (Tr. 272). Ms. Chiles returned to work but was later terminated from her employment. (Tr. 52).

At the request of the State agency, Ms. Chiles had a consultative examination on July 6, 2011 with Jennifer Lomonaco McLean, M.D. at Disability Exam Services in Littleton, Colorado, for her reported history of back pain related to her disability applications. (Tr. 279-84). Ms. Chiles reported her back pain as located predominantly in her right lower back area and as level "10" out of "10," but she was not taking any medication for her pain. (Tr. 279). Dr. McLean noted that Ms. Chiles "appeared in no acute distress, . . . appeared to sit comfortably during the examination, . . . did not appear uncomfortable getting on and off the table," and "was able to rise spontaneously and unaided from a seated position . . . ." (Tr. 280). Ms. Chiles "had a normal gait," and had mild to no discernible discomfort with a full range of cervical and dorsolumbar motion. (Tr. 282). She had no tenderness to palpation in the cervical, thoracic, lumbar, or sacral spine. (Tr. 283). She had normal reflexes, sensation, and motor strength in the upper and lower extremities. (Tr. 283). X-rays revealed mild thoracic and lumbar degenerative disc disease and degenerative joint disease and scoliosis. (Tr. 283, 285-86). Dr. McLean concluded that Ms. Chiles could "stand, walk or sit for six out of eight hours on a regular basis, . . . should not be required to carry or lift greater than 15 pounds," and "would benefit greatly from increased frequency of breaks every 30 to 60 minutes to allow for stretching." (Tr. 284). "She could engage in postural and manipulative activities on an occasional basis" and could engage in heights, stairs, and ladders on an infrequent, but occasional basis . . . ." (Tr. 284).

On February 2, 2012, Ms. Chiles was seen by Physician's Assistant Eileen Monyok at Clinica Family Health Services for complaints of back pain (Tr. 294-296). Ms. Chiles reported she had experienced back pain for two years that was worsening. (Tr. 294). She was not taking any pain medication. (Tr. 294). Examination revealed that Ms. Chiles was in "no apparent distress," had "limited flexion & extension of back due to muscle tightness & pain," and had tenderness to palpation in the right lower back area. (Tr. 295). Ms. Monyok prescribed Flexeril, a muscle relaxant. (Tr. 296).

Ms. Chiles was seen on February 8, 2012 for follow-up with Daniel O'Brien, D.O. (Tr. 297-298). Ms. Chiles reported moderate lower back pain. Examination revealed some tenderness to palpation in the right sacroiliac joint, "[n]o lumbar spine tenderness," "[n]ormal mobility and curvature," and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 298). Ms. Chiles was again seen by Ms. Monyok on February 13, 2012 for allergies. (Tr. 299-300).

At a follow-up visit with D.O. O'Brien on February 22, 2012, Ms. Chiles reported lower back pain that was moderate, stable, and persistent. (Tr. 301). D.O. O'Brien recommended "extension exercises" and a follow-up in two weeks. (Tr. 302). D.O. O'Brien completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" ("Medical Assessment form"), opining that Ms. Chiles could never lift up to 10 pounds, occasionally carry up to 10 pounds, sit for one hour at one time and for four hours total in an eight-hour workday, stand for one hour at one time and for two hours total in an eight-hour workday, walk for one hour at one time and for two hours total in an eight-hour workday, occasionally climb stairs, stoop, crouch, and crawl; and never climb ladders or scaffolds, kneel, or balance. (Tr. 289-91). D.O. O'Brien also opined that Ms. Chiles should avoid even moderate exposure to unprotected heights, avoid concentrated exposure to moving mechanical parts, humidity and wetness, and temperature

8

extremes, and that on average she would be unable to work four or more days per month. (Tr. 292-293).

At a follow-up office visit with D.O. O'Brien on March 7, 2012, Ms. Chiles reported her lower back pain as ongoing, stable and persistent. (Tr. 303). She had decreased sensation in her right lower extremity, but had normal muscle strength, normal balance and gait, and normal reflexes. (Tr. 304). Ms.Chiles was seen by Ms. Monyok for a wellness exam three months later, on June 28, 2012. (Tr. 305-307). At that time, she had "[n]o bony, muscular or joint tenderness, swelling, or deformity" and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 306). On July 12, 2012, Ms. Chiles was seen for a routine blood pressure check. (Tr. 308-309). She reported no complaints of back pain. (Tr. 308- 09).

At a follow-up visit with D. O. O'Brien eleven months later, on February 6, 2013, Ms. Chiles complained of severe, chronic back pain. (Tr. 310-311). Examination revealed that she had muscle spasm in her lumbar spine and a positive straight leg raise test on the left. (Tr. 311). Her sensation was intact bilaterally in the upper and lower extremities, she had no motor weakness, her balance, gait and coordination were intact, and her deep tendon reflexes were symmetric  (Tr. 311).

On July 11, 2013, D.O. O'Brien completed a Med-9 form for Ms. Chiles's application for the Aid to the Needy and Disabled ("AND") program of the Colorado Department of Human Services. (Tr. 314). He checked the box on the Med-9 form that she was "totally and permanently disabled." (Tr. 314). On August 9, 2013, D.O. O'Brien completed an addendum to the previous "Medical Assessment of Ability to Do Work-Related Activities (Physical)," wherein he added that Ms. Chiles would require three or more unscheduled breaks of 15 minutes or

longer during the work day. (Tr. 321). Ms. Chiles submitted these two documents in response to notice from the Appeals Council of its review of the ALJ's decision. (Tr. 140-144).

Following the five-step evaluation process, the ALJ determined that Ms. Chiles: (1) had not engaged in substantial gainful activity since the established onset date of disability, February 22, 2012, (2) had severe impairments of "thoracic degenerative disc disease and degenerative joint disease; lumbar degenerative disc disease; scoliosis; status-post 2009 back injury, and status-post 2006 left shoulder surgery since the alleged onset date of disability, August 15, 2009, and (3) did not have an impairment or combination of impairments listed in or medically equal to one listed in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 35-36). The ALJ further found that prior to February 22, 2012, Ms. Chiles had the RFC to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), that is, she could lift, carry, push, or pull 10 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk six hours out of an eight- hour workday; and perform postural activities such as climbing, stooping, kneeling, crouching, and crawling on an occasional basis. (Tr. 35-36). The ALJ found that beginning on February 22, 2012, Ms. Chiles had the same RFC to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but that she would be absent from work four or more days per month. (Tr. 37).

The Appeals Council agreed with the ALJ's findings at steps 1, 2, 3 and 4 of the sequential evaluation, except the ALJ's RFC finding that, beginning on February 22, 2012, Ms. Chiles had the capacity to perform a range of sedentary work, but would be absent from work four or more days per month. (Tr. 18). The Appeals Council also disagreed with the ALJ's determination at step five of the sequential process that Ms. Chiles had been under a disability

as defined by the Social Security Act since February 22, 2012. (Tr. 18). Ms. Chiles now challenges the Appeals Council's determination at step five of the evaluation process, claiming that: (1) the determination that she can work is not based upon substantial evidence and contrary to the hypotheticals propounded to the VE, (2) the Appeals Council failed to give appropriate weight to the opinions of D.O. O'Brien, and (3) the determination that her subjective complaints were not fully credible was not supported by substantial evidence and fails to comply with SSR 96-7p and 20C.F.R. § 404.1529. (*See* Doc. # 12).

A.   Credibility of Ms. Chiles's Subjective Complaints

The Appeals Council determined that Ms. Chiles's subjective complaints of symptoms and pain were not fully credible. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks, brackets, and citation omitted). Evidence the Commissioner should consider includes such items as "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor," and "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (internal quotation marks and citation omitted). "[S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a "formalistic factor-by-factor recitation of the evidence." *Id.* "[C]ommon sense, not technical perfection, is our guide." *Id.*

11

The court concludes that the Appeals Council's determination of Ms. Chiles's credibility is supported by substantial evidence. Other than Ms. Chiles' subjective complaints, the medical record reveals only mild to moderate positive findings during the period at issue. On the date of the initial sudden onset of back pain, Ms. Chiles was administered and prescribed pain medication and released from the Emergency Department the same day. (Tr. 232-238). The very next day, she had some tenderness in the right shoulder. (Tr. 275). She was prescribed pain medication and physical "therapy 2 times per week for 1 to 2 weeks." (Tr. 276). Even with her lack of attendance at physical therapy, within two months she was improved, with good to full range of motion, reduced or no pain, and normal strength. (Tr. 251, 270, 272-74). On July 21, 2009, she was released her to resume regular activity with no work restrictions. (Tr. 272).

The medical record is devoid of further treatment or examination for two years, until Ms. Chiles attended the consultative examination with Dr. McLean on July 6, 2011, after her application for disability benefits. (Tr. 279-84). This two year absence of treatment between 2009 and 2011, the same time period when Ms. Chiles claims she was disabled and applied for benefits, suggests that her complaints were not as disabling as she alleges. *See Giuliano v. Colvin*, No. 13-1455, 577 F. App'x 859, 863 (10th Cir. Sept. 2, 2014) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1267-68 (10th Cir. 2013) (14–month hiatus in treatment belied claimant's allegation of extremely limited lifestyle)).

At the July 6, 2011 consultative examination requested by the State agency, Ms. Chiles reported her back pain as level "10" out of "10," but she was not taking any medication for her pain. (Tr. 279). On that date, Ms. Chiles "appeared in no acute distress, . . . appeared to sit comfortably during the examination, . . . did not appear uncomfortable getting on and off the table," "was able to rise spontaneously and unaided from a seated position . . . ," "had a normal

12

gait," and had mild to no discernible discomfort with a full range of cervical and dorsolumbar motion. (Tr. 280, 282). She had no tenderness to palpation in the cervical, thoracic, lumbar, or sacral spine, and had normal reflexes, sensation, and motor strength in the upper and lower extremities. (Tr. 280, 282-283). In medical records from 2012 and 2013, Ms. Chiles reported moderate lower back pain that was stable. (Tr. 297-98, 301, 303). Examinations in February of 2012 revealed that Ms. Chiles was not taking any pain medication for her reported back pain, was in "no apparent distress," had "limited flexion & extension of back due to muscle tightness & pain," had tenderness to palpation in the right lower back area, some tenderness to palpation in the right sacroiliac joint, "[n]o lumbar spine tenderness," "[n]ormal mobility and curvature," and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 294-295, 297-298). "[E]xtension exercises" were recommended. (Tr. 302). An examination in March 2012 revealed that Ms. Chiles had normal muscle strength, normal balance and gait, and normal reflexes. (Tr. 304). An examination in June 2012 indicated that Ms. Chiles had "[n]o bony, muscular or joint tenderness, swelling, or deformity" and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 306). Ms. Chiles was seen for a routine blood pressure check on July 12, 2012, at which time she reported no complaints of back pain. (Tr. 308-309). At an examination on February 6, 2013, while Ms. Chiles complained of severe, chronic back pain, her sensation was intact bilaterally in the upper and lower extremities, she had no motor weakness, her balance, gait and coordination were intact, and her deep tendon reflexes were symmetric. (Tr. 310-311). No one has ever recommended surgery for her condition. (Tr. 53). Her alleged limitations are greater than those to be expected in light of the medical evidence of record.

Ms. Chiles' daily activities also support the Appeals Council's finding that her complaints of disabling back pain were not consistent with the other evidence in the record. In May 2011,

Ms. Chiles reported she could get in and out of bed, bathe and groom herself, prepare her own meals, do laundry and some cleaning, cut her own hair, go outside daily, walk for 10 to 20 minutes, feed and walk her dog, do occasional grocery and other shopping, manage her finances, watch television and movies, and squat and bend with help getting up. (Tr. 210-217). At that time she was only taking one prescription medication, Zoloft, and over the counter ibuprofen. (Tr. 209, 217). At the hearing held on March 22, 2013, Ms. Chiles testified that she is able to get in and out of bed, do some stretching, bathe and dress herself, prepare breakfast for her grandchildren, pick her grandson up from school, do some cooking, cleaning, and dishes, do some grocery shopping, lift a 15-pound bag of potatoes, and walk as far as "across the street." (Tr. 48-50). At that time she was only taking one prescription medication for her back pain, Flexeril, a muscle relaxant. (Tr. 53). Ms. Chiles' daily activities also undercut her claim that she is completely disabled and unable to work. *See Newbold*, 718 F.3d at 1267 (claimant's allegations of debilitating fatigue and widespread pain inconsistent with daily activities).

In sum, the Appeals Council's determination of Ms. Chiles's credibility is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court finds no error on this issue.

B.     Weight Given to the Opinions of D.O. O'Brien

Ms. Chiles alleges that the Appeals Council failed to give appropriate weight to the opinions of D.O. O'Brien. "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). *See also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) ("An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record.") (citations omitted)).

D.O. O'Brien saw Ms. Chiles a total of four times between February 8, 2012 and February 6, 2013. (Tr. 297-298, 301-304, 310-311). On the first visit on February 8, 2012, Ms. Chiles reported moderate lower back pain and D.O. O'Brien's examination revealed some tenderness to palpation in the right sacroiliac joint, "[n]o lumbar spine tenderness," "[n]ormal mobility and curvature," and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 297-298). He did not prescribe her any additional medications. (Tr. 296-298).

On the second visit on February 22, 2012, Ms. Chiles reported lower back pain that was moderate and stable and O'Brien recommended "extension exercises" and a follow-up in two weeks. (Tr. 301-302). He did not order any tests or scans or prescribe any medications. (Tr. 296-298). (Tr. 302). Also on the second visit on February 22, 2012, D.O. O'Brien completed a disability form for Ms. Chiles. (Tr. 289-293). He opined that she could never lift up to 10 pounds, occasionally carry up to 10 pounds, sit for one hour at one time and for four hours total in an eight-hour workday, stand for one hour at one time and for two hours total in an eight-hour workday, walk for one hour at one time and for two hours total in an eight-hour workday,

15

occasionally climb stairs, stoop, crouch, and crawl; and never climb ladders or scaffolds, kneel, or balance. (Tr. 289-91). He also opined that Ms. Chiles should avoid even moderate exposure to unprotected heights, avoid concentrated exposure to moving mechanical parts, humidity and wetness, and temperature extremes, and that on average she would be unable to work four or more days per month. (Tr. 292-293).

Since D.O. O'Brien had seen Ms. Chiles on February 2, 2012, she had also been seen once by P.A. Monyok on February 13, 2012 for allergies. (Tr. 299-300). Ms. Chiles did not mention any back pain on that date. (Tr. 299-300). When she was seen by D.O. O'Brien at an office visit on March 7, 2012, Ms. Chiles reported her lower back pain as ongoing and stable. (Tr. 303). She had decreased sensation in her right lower extremity, but had normal muscle strength, normal balance and gait, and normal reflexes. (Tr. 304). At the time of a wellness exam performed by P.A. Monyok three months later, on June 28, 2012, Ms. Chiles had "[n]o bony, muscular or joint tenderness, swelling, or deformity" and normal motor, sensory, gait, and deep tendon reflexes. (Tr. 306). On July 12, 2012, Ms. Chiles was seen for a routine blood pressure check. (Tr. 308-309). She reported no complaints of back pain on that date. (Tr. 308-09).

Ms. Chiles next saw D. O. O'Brien at a follow-up visit eleven months later, on February 6, 2013, at which time Ms. Chiles complained of severe, chronic back pain. (Tr. 310-311). While she had muscle spasm in her lumbar spine and a positive straight leg raise test on the left, her sensation was intact bilaterally in the upper and lower extremities, she had no motor weakness, her balance, gait and coordination were intact, and her deep tendon reflexes were symmetric (Tr. 311). On July 11, 2013, without seeing Ms. Chiles for more than five months, D.O. O'Brien completed a Med-9 form for the Colorado Department of Human Services, on which he checked

the box that she was "totally and permanently disabled." (Tr. 314). On August 9, 2013, D.O. O'Brien completed an addendum to his previous assessment, wherein he added that Ms. Chiles would require three or more unscheduled breaks of 15 minutes or longer during the work day. (Tr. 321).

The Appeals Council decided that the medical records during the period at issue are inconsistent with the RFC assessment that the ALJ determined began on February 22, 2012. (Tr. 18).  The court agrees with the Appeals Council's conclusion that medical records during the period at issue are inconsistent with the ALJ's RFC assessment for the time period after February 22, 2012.  The court concludes that the Appeals Council properly evaluated D.O. O'Brien's opinion and clearly articulated good reasons for rejecting his opinion that Ms. Chiles would be unable to work four or more days per month.  As the Appeals Council explained, D.O. O'Brien's opinion was inconsistent with not only his own treatment records, but also the records of other medical providers and Ms. Chiles' own description of her activities.  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted).  *See* also *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (ALJ reasonably discounted physician opinions in light of other evidence of claimant's capabilities and is not required to "apply expressly" every relevant factor for weighing opinion evidence); *Branum v. Barnhart*, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (upholding ALJ's rejection of treating physician's opinion because physician provided limited medical treatment of allegedly disabling condition).  *White v. Barnhart*, 287 F.3d 903, 907-08

(10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and examination notes a legitimate factor for rejecting that opinion).

It is clear to the court that the Appeals Council considered the appropriate factors. *See Watkins v. Barnhart*, 350 F.3d at 1300-01 (setting forth factors for weighing treating source medical opinions). Among those factors are the sporadic nature of Ms. Chiles's treatment for back pain and her treatment relationship with D.O. O'Brien, the fact that he did not order any tests or scans, prescribe any medication, or recommend any surgery, and the lack of evidentiary support for his opinion reflected on the disability forms. The Appeals Council's analysis and conclusion are supported by substantial evidence in the record and tied to the appropriate factors. The court finds no error on this issue.

C.  Appeals Council's Determination at Step Five that Ms.Chiles Can Work

Ms. Chiles alleges that the Appeals Council's finding that she can work is not based upon substantial evidence, is for part-time work, and is contrary to the hypotheticals propounded to the VE. (*See* Doc. # 12 at 9 of 23).

The ALJ determined that prior to February 22, 2012 Ms. Chiles was not disabled because she had the RFC "to perform a range of sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 35). "Specifically, the claimant can lift, carry, push, or pull 10 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk six hours out of an eight- hour workday; and perform postural activities such as climbing, stooping, kneeling, crouching, and crawling on an occasional basis." (Tr. 35). The ALJ found that beginning on February 22, 2012, Ms. Chiles had the *identical* RFC "to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" and could "lift, carry, push, or pull 10 pounds occasionally and 10

pounds frequently; sit, stand, and/or walk six hours out of an eight-hour workday; perform postural activities such as climbing, stooping, kneeling, crouching, and crawling on an occasional basis." (Tr. 37). Based upon D.O. O'Brien's opinion, the ALJ also found that Ms. Chiles "would be absent from work four or more days per month." (Tr. 37).

The Appeals Council agreed with the ALJ's conclusion for the time period prior to February 22, 2012. However, for the time period after February 22, 2012, the Appeals Council found that D.O. O'Brien's opinion that Ms. Chiles would miss four or more work days per month was inconsistent with the other evidence in the record. When the Appeals Council no longer relied upon D.O. O'Brien's additional opinion that Ms. Chiles would be absent from work four or more days per month, it determined that for the time period after February 22, 2012, "she can lift, carry, push, or pull 10 pounds occasionally and 10 pounds frequently; sit, stand and/or walk six hours out of an eight- hour workday; and perform postural activities such as climbing, stooping, kneeling, crouching, and crawling on an occasional basis." (Tr. 21). Based on that determination, the Appeals Council concluded that Ms. Chiles has the RFC "to perform a reduced range of the sedentary exertional level" and is thus not disabled.

Absent D. O. O'Brien's additional opinion that Ms. Chiles would be unable to work four or more days per month, the RFC that was formulated by the ALJ for the time period before February 22, 2012 is identical to the RFC for time period after February 22, 2012. Ms. Chiles does not challenge the RFC determination for the time period before February 22, 2012. The RFC relating to the time period before February 22, 2012 and the time period after February 22, 2012 was encompassed within VE Jesko's assessment of the jobs Ms. Chiles can perform. There is no evidence in the record that Ms. Chiles can only work part-time. Ms. Chiles' limitations were accounted for in her RFC. An individual of Ms. Chiles's age, with her education,

past relevant semiskilled and skilled work, RFC, and vocational factors is not disabled. The court finds no error on this issue.

IV.     Conclusion

The court is satisfied that the Appeals Council considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Chiles was not disabled within the meaning of Titles II and XVI of the Social Security Act and therefore not eligible to receive Supplemental Security Income or Social Security Disability Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

DATED at Denver, Colorado, this 16th day of March, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge